# IN THE COURT OF APPEALS OF IOWA

No. 17-1880
Filed February 7, 2018

**IN THE INTEREST OF B.S.,**
**Minor Child,**

**M.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals a juvenile court order terminating his parental rights. **AFFIRMED.**

David Barajas of Macro & Kozlowski, L.L.P., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Brent M. Pattison, Supervising Attorney, and Wendy S. Rima, Student Legal Intern, of Drake Legal Clinic, Des Moines, guardians ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A father appeals a juvenile court order terminating his parental rights to his minor child. The child, B.S., was born prematurely in January 2017 and tested positive for methamphetamines (meth) and tetrahydrocannabinol. The mother admitted to drug use during her pregnancy and advised hospital staff she had no intention of caring for the child. She ultimately abandoned the child at the hospital. A removal order was entered, and the child was adjudicated a child in need of assistance. The child was placed in foster care with his older half-sibling's adoptive mother. The appellant was subsequently identified as a putative father of the child. He was incarcerated when he submitted to paternity testing; testing confirmed he is the biological father of the child. After the father was released from jail, he provided the Iowa Department of Human Services (DHS) with his contact information. DHS was never able to reach the father using his provided contact information. The father testified he attempted to contact DHS once he learned he is the biological father of the child but he was unable to reach anyone. He did not attempt to contact DHS thereafter.

At the time of the termination hearing, the father was incarcerated on seven counts of forgery. According to his testimony, he pled guilty "to a count of theft second and a count of forgery" and was admitted into the drug-court program. If he is not successful in drug court, he could go to prison. In the two or three years leading up to the termination hearing, the father spent the majority of his time incarcerated, and the longest continuous duration of time he was out of jail was approximately six months. For the past nine years, substance abuse has been, according to the father's testimony, a "major factor" in his life. This

has included use of marijuana, crack cocaine, and meth. The father testified that, at the time of the termination hearing, meth was his "drug of choice." He further testified completion of the drug court program would take him "anywhere between a year and a year and a half" and he was unsure of whether he would be able to have a child reside with him while he is in the program. At the time of the termination hearing, the father was still incarcerated and had yet to meet or otherwise have contact with the child.

The child has been in the same foster-care placement his entire life. As noted, his foster mother adopted his older half-sibling. The child is thriving and integrated in this placement, and his foster mother is willing and able to serve as a permanent placement.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2017).[1] The father appeals. He does not challenge the State's establishment of the statutory grounds for termination. Instead, he contends the juvenile court erred in (1) concluding termination was in the best interests of the child and (2) declining to grant him additional time to work towards reunification. Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

We first consider whether termination was in the best interests of the child. In considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional

---

[1] The mother's parental rights were also terminated. She does not appeal.

condition and needs of the child." Iowa Code § 232.116(2). This child has never met his biological father. Up until the time of the termination hearing, the father exhibited little interest in being involved in his son's life. In contrast, the child has spent his entire life in a foster placement in which he is thriving. The child is integrated into his current home, and his foster mother is willing and able to serve as a permanent placement. Based on these circumstances, we conclude termination is in the child's best interests. *See id.* § 232.116(2)(b)(1); *cf. M.W.*, 876 N.W.2d at 224–25 (concluding termination was in best interests of children where children were well-adjusted to home with their caregivers, the caregivers were "able to provide for their physical, emotional, and financial needs," and the caregivers were prepared to adopt the children).

We next consider the father's argument that the district court erred in declining to grant him additional time to work towards reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Upon our de novo review, we are unable to make a finding that the need for removal would no longer exist after the father's requested extension. We therefore affirm the termination of the father's parental rights.

**AFFIRMED.**