**IN THE COURT OF APPEALS OF IOWA**

No. 24-0850
Filed July 24, 2024

**IN THE INTEREST OF L.G. and S.S.,**
**Minor Children,**

**M.S., Mother,**
      Appellant.

_____

      Appeal from the Iowa District Court for Clarke County, Monty Franklin, Judge.

      A mother appeals the termination of her parental rights.  **AFFIRMED.**

      Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

      Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

      Marc Elcock, Osceola, attorney and guardian ad litem for minor children.

      Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her children, L.G., born in 2017, and S.S., born in 2021.[1]  She contends the State failed to prove the grounds for termination relied on by the district court.  Upon our review, we affirm.

**I.    Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2022, upon concerns relating to the mother's use of marijuana in the presence of the children; the mother's boyfriend, T.W., using and selling methamphetamine in the family's home; and domestic violence in the home.  The children tested positive for methamphetamine.  A safety plan was entered requiring T.W. to leave the home and have no contact with the children.  But two days later, T.W. was observed at the home, with S.S. present, in violation of the safety plan.  As a result, the children were removed from the mother's custody and adjudicated in need of assistance.  Initially, the children were placed together with L.G.'s father.  S.S. was later placed with her maternal aunt.  Both children remained in these placements at the time of the termination hearing.

The mother did not engage in services.  The court entered a dispositional order in July, noting in part: "[The mother] will need to participate in mental health therapy, substance abuse treatment, and provide clean drug screens."

In January 2023, the mother tested positive for methamphetamine, but she denied substance use.  The mother also continued to have contact with T.W., and HHS noted the mother's "long history of being in unsafe and unhealthy

---

[1] S.S.'s father consented to termination of his parental rights; he does not appeal. L.G.'s father's parental rights were not terminated.

relationships" and her inability to "demonstrate an understanding of safe relationships." Indeed, the mother did not report a history of domestic violence, despite being a protected party of no-contact orders issued against three paramours during these proceedings.

In April, pursuant to the parties' agreement, the court granted the mother a six-month extension to "meaningfully engage in the services requested by HHS in a timely fashion." The court instructed, "Meaningful engagement means more than simply attending the appointments but being able to demonstrate that they've developed insight into the issues which led to the children's removal." The mother disregarded the court's directive. In September, HHS reported the mother still had "not engaged in individual therapy to address concerns with unsafe relationships and domestic violence" and she was minimally participating in her supervised visits with the children. In October, the mother again tested positive for methamphetamine.

The State initiated termination-of-parental-rights proceedings one month later. The termination hearing took place in April 2024. By then, the children had been removed from the mother's custody for approximately twenty-two months. During that time, the mother denied substance use but tested positive for methamphetamine on multiple occasions. The mother recently gave birth to a baby who tested "negative for all substances."[2] The caseworker testified that although the mother "would voice that she wanted to be engaged" in services, "ultimately, she didn't engage in those services until the end of the case." And

---

[2] Separate HHS proceedings were initiated relating to that child, who was placed with the maternal grandmother.

because of the mother's lack of engagement in services, her visitation with the children remained "professionally supervised." HHS and the guardian ad litem opined termination of the mother's parental rights would be in the best interests of the children.

The court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (f) (concerning L.G.), and (h) (concerning S.S.) (2024). The mother appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Analysis

The mother challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. We may affirm if we find clear and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on Iowa Code section 232.116(1)(f) and (h), which require proof of several elements conceded by the mother and proof the children could not be returned to her custody. *See* Iowa Code § 232.116(f)(4), (h)(4). The mother claims the evidence did not establish the children could not be returned to her custody at the time of the termination hearing because she was "actively bettering her life through substance

abuse treatment, seeking mental health services, and cutting out violent offenders from her life."

We commend the mother's recent engagement in services, but such engagement comes after nearly two years of the children's removal. At the termination hearing, the mother acknowledged it took "some time [for her] to begin the therapy," but stated she began participating in services "after the last court date [in October 2023]."[3] She explained she was "working on what we call a new, healthy environment" and "[i]t has opened [her] eyes of the unhealthy situations that [she] chose." The mother maintained she had not used methamphetamine despite her positive tests,[4] but she admitted she "did have a drinking problem." The mother stated she had been sober more than six months, but she acknowledged she had "not been drug tested in the last several months." When asked if the children could be returned to her care "today," she stated, "I have the confidence but it—it's not up to me." According to the mother, "[N]ow I am more focused on me and my children, and I am willing to keep pushing forward and making the good progress that I'm making now."

The guardian ad litem noted "the efforts that Mom has made most recently" but opined "there is ample evidence to grant the request for the termination."

---

[3] She agreed her engagement in the case was "far from" the time of the children's removal.

[4] She testified her positive tests resulted from exposure to people around her using, but she "was not aware of what they were using." Relating to the mother's drug tests, the guardian ad litem reasoned, "[W]hether or not Mom is using methamphetamine, Mom placing herself in the company of people who are using methamphetamine is equally concerning and potentially dangerous to the children." We concur with the guardian ad litem's "concerns with the lack of honesty throughout the case."

Relating to the mother's consistency "in complying with services," the caseworker testified, "I would say overall she had been really inconsistent, and she really didn't start engaging in those services until the end of 2023, beginning of 2024." In short, the concerns prompting HHS's initial involvement with the family remained at the time of the termination hearing. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[T]he mother failed to progress toward reunification over the life of this case. She never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). The caseworker further noted "how long it would take her to engage in the services needed to even be able to recommend a return to her." *See In re C.B.*, No. 24-0073, 2024 WL 1548807, at *2 (Iowa Ct. App. Apr. 7, 2024) ("After two years of little to no progress, the mother entered treatment just before the termination hearing."). Clear and convincing evidence exists for termination of the mother's parental rights. Accordingly, we affirm.[5]

**AFFIRMED.**

---

[5] The mother does not challenge the finding that termination is in the children's best interests or ask us to consider exercising a permissive exception to termination. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (noting three steps of review in termination-of-parental-rights cases). We therefore limit our analysis to the contested step. *See In re R.M.*, No. 24-0143, 2024 WL 1297678, at *3 (Iowa Ct. App. Mar. 27, 2024, *see also In re J.F.*, No. 19-1647, 2020 WL 110404, at *1 (Iowa Ct. App. Jan. 9, 2020) ("[W]hen, as here, the parent's claims only relate to one step in our analysis, we only address that step.").