# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––

No. 25-2212
Filed May 13, 2026

––––––––––––––––

**In the Interest of K.U., J.U., J.U., M.U., C.U., Z.U., and K.U., Minor Children,**

**J.U., Father,**
Appellant,

**K.L., Mother,**
Appellant.

––––––––––––––––

Appeal from the Iowa District Court for Harrison County,
The Honorable David W. Brooks, Judge.

––––––––––––––––

**AFFIRMED**

––––––––––––––––

William T. Early, Harlan, attorney for appellant father.

Keith R. Tucker of Woods Tucker, P.L.L.C., Glenwood, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Abby L. Davison, Council Bluffs, attorney and guardian ad litem for minor
children.

––––––––––––––––

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to seven children. Both parents challenge the statutory grounds for termination. The mother additionally argues that termination was not in the children's best interests. Upon our de novo review of the record, we affirm the juvenile court's termination of the mother and father's parental rights to all seven children.

## I. Background Facts and Proceedings.

The mother and father are the parents of seven children—four girls and three boys—born in 2014, 2015, 2019, 2021, 2022, 2023, and 2024.[1] The family most recently came to the attention of the Iowa Department of Health and Human Services (HHS) in June 2024 due to concerns of substance use, domestic violence between the parents, inadequate food, and unstable housing. At the time, the parents and four of the children were living in a camper in a friend's backyard in a small Iowa town. The mother was pregnant with the youngest child, and the two oldest children were living with friends due to a lack of space and transportation issues.

On July 3, after the parents failed to participate in HHS's attempts to create a safety plan, the six older children were temporarily removed from the parents' custody. After the July 10 removal hearing, the court concluded that continued removal was necessary and ordered the parents to obtain

---

[1] No one disputes that the father is the father of the children, but four of the children's birth certificates do not list a father. The parental rights of any unknown fathers were terminated under Iowa Code section 232.116(1)(b) (2025), and no unknown fathers have appealed that determination.

mental-health and substance-use evaluations, participate in drug testing, and engage with Family-Centered Services (FCS).

Shortly after the removal hearing, the mother gave birth to the youngest child and tested positive for benzodiazepine while still in the hospital. She later claimed the positive result was from a valid prescription from the emergency room, but she never produced any documentation to support that claim.

The youngest child required hospitalization in a neonatal unit for a period of time after she was born. The mother only visited the child in the hospital once or twice but claimed she monitored the child more frequently on an application on her phone. The father never visited the child in the hospital. The child was removed from the parents' custody upon her discharge from the hospital.

On August 28, all seven children were adjudicated children in need of assistance (CINA). The court again ordered the parents to undergo mental-health evaluations and participate in drug testing. The mother, who was participating in methadone therapy, was ordered to continue working with her treatment provider and to participate in a domestic violence prevention program. The father was again ordered to obtain a substance-use evaluation and was further ordered to complete anger management classes.

The mother began participating in supervised visits with the children, but she often did not bring enough food for the children or other necessary supplies, such as diapers for the youngest child. The mother sometimes struggled to provide care for all the children at the same time. In November, the mother showed up for two visits smelling of alcohol. The mother canceled or no-showed for several visits in December 2024 and January 2025,

and she did not consistently attend visits from March to July. Even when at visits, she often left early. During one visit in January, the children were transported to the visit location and were waiting for the mother, but the mother, who was aware of the visit, missed the visit because she was across the street talking to an HHS employee. Throughout this case, the mother did not communicate consistently with HHS or FCS, and she did not progress beyond supervised visits.

The mother tested positive for methamphetamine on September 27, November 22, and December 5, 2024, and February 21, 2025. Despite these positive drug tests, the mother continued participating in methadone treatment and substance-use therapy for most of this case.

In March, the mother moved to a larger city two hours away from the children to participate in a trauma-informed supportive living program for women. However, she was unsuccessfully discharged from the program in May after failing to comply with several of the program's rules. She did not report the unsuccessful discharge to HHS. After leaving the program, the mother lived in a homeless shelter in the city. During this period, she no-showed for a visit even though she had confirmed it and the children had traveled to the city to see her. Around this time, the mother also had limited contact with HHS and did not participate in drug testing. It is unclear whether the mother participated in methadone therapy during this time.

By the father's own admission, he did not participate in any services from July 2024 through June 2025. During that same time, he rarely participated in visits with the children and did not tell HHS whether he had a job, where he was living, or how to contact him. In March 2025, the father was arrested, and he remained in jail until he was released in June. After the father's release from jail, he began meeting with the HHS social worker and

participating in visits with the children. He participated in his first drug test on June 26, which was negative.

In early July, the mother moved back to the small town where they had previously lived. At that time, the mother informed the HHS social worker that she intended to move to a farm in Nebraska, which was two hours from the children, to work in exchange for lodging. The social worker expressed concern because visits could not be offered out of state, but the mother said she was going to get a vehicle so she could drive back and forth for visits.

After the July 9 permanency hearing, the juvenile court changed the permanency goal from reunification to termination of parental rights and ordered the State to file termination petitions. After this hearing, the mother abandoned her plan to move to the farm in Nebraska.

Sometime after this hearing, the father got a job, but his employment status was not stable and he was still barred from driving. The father did not have a plan to travel legally to the current job.

In August, the HHS social worker asked the mother to register the children for school. Despite saying that she would, the mother never followed through. Eventually, the children's placements had to register the children for school. On August 22, the State filed petitions to terminate the parents' rights to all seven children.

The father underwent substance-use and mental-health evaluations in September. The substance-use evaluation reported the father's last date of use was March 2025. The father was diagnosed with severe cannabis-use disorder and mild methamphetamine-use disorder. He was found to be a "moderate risk" to relapse. The report recommended he participate in extended-outpatient treatment.

The mental-health evaluation diagnosed him with adjustment disorder, unspecified, but no treatment was recommended. This conflicted with the father's report during the substance-use evaluation that he had been diagnosed with schizophrenia and bipolar disorder while in jail. Those diagnoses were not mentioned in the mental-health evaluation report.

Also in September, the father informed HHS that he bought a three-bedroom, one-bathroom trailer in a town forty minutes away from the children. HHS inspected the trailer and determined that it needed work before it would be appropriate for the children. For example, the kitchen cabinets did not have doors. The father did, however, have beds for six of the children.

In October, the father was arrested twice within eight days for driving while barred. These charges remained pending at the time of the termination hearing.

The juvenile court held the termination hearing over two days, on October 22 and November 4. The HHS social worker and guardian ad litem recommended termination of both parents' parental rights to all seven children. The father consented to termination of his rights to the youngest child.

At the time of the termination hearing, the father had not completed anger management classes as ordered and had not participated in any substance-use treatment. The father had not attended any of the children's appointments and provided minimal financial assistance to the children throughout the case. While he had a vehicle, he was still barred from legally driving and did not know when he would get his license back. The father had not made the requested repairs to the trailer. He had recently quit his job and

accepted another job at a restaurant, but he had not yet started. He had also recently undergone hand surgery.

The mother had not completed domestic violence prevention classes as ordered, although she had completed the SafeCare program. The mother had only participated in mental-health therapy during her stay at the supportive living program. She had not completed a mental-health evaluation as ordered by the court. The mother's last few drug screens were negative, and she continued to participate in methadone treatment and substance-use therapy, which she claimed had a mental-health component.

The mother did not have consistent housing or employment during this case. At the time of the termination hearing, she was living in a one-bedroom apartment with a friend and the friend's two children. She testified that she had been approved for a four-bedroom apartment through municipal housing in Council Bluffs and a four-bedroom house in Harrison County, but neither were currently available. She anticipated that she would be able to move into one of those options at the end of November. For the two months before the termination hearing, the mother had been working a part-time job doing cleanup for a construction company. The mother did not have a vehicle. She had provided minimal financial support for the children and had attended few of the children's appointments.

After the hearing, the juvenile court terminated the mother and father's parental rights under Iowa Code section 232.116(1)(e) as to all seven children, under section 232.116(1)(f) as to the older four children, and under section 232.116(1)(h) as to the younger three children. The parents separately appeal.

## II. Standard of Review.

We review termination-of-parental-rights cases de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.*

The grounds for termination must be established by clear and convincing evidence. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Evidence is considered clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *Id.* (cleaned up).

## III. Analysis.

Our courts use a three-step analysis to review the termination of parental rights under chapter 232. *Id.* We must first determine whether the State has proved a statutory ground for termination. *Id.* If so, we then consider whether termination of parental rights is in the children's best interests. *Id.* at 219–20. Finally, if termination is in the children's best interests, we then "consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220. If a parent does not challenge one of the steps in the analysis, we need not consider that step in our review of the juvenile court's termination order. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

On appeal, both parents challenge the statutory grounds for termination. The mother additionally argues that termination was not in the children's best interests. We address each parent's appeal separately.

**A. Mother's Appeal.** The mother challenges the statutory grounds for termination and the juvenile court's best-interests determination. We address each argument in turn.

1. *Statutory grounds for termination.* The juvenile court terminated the mother's parental rights under section 232.116(1)(e), (f), and (h). When the juvenile court terminates parental rights on multiple grounds, we need only find termination was proper on one ground to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We choose to focus on subsections 232.116(1)(f)[2] and (h).[3] These two subsections are substantially similar, differing only in the ages of the children

---

[2] Section 232.116(1)(f) provides that termination is appropriate when:

    (1) The child is four years of age or older.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[3] Section 232.116(1)(h) provides that termination is appropriate when:

    (1) The child is three years of age or younger.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the

each subsection applies to and the length of time the children are removed from the home. The mother challenges only the fourth element of both subsections: that the children could not be returned to her custody "at the present time." Our courts have defined "at the present time" to mean "at the time of the termination hearing." *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

On appeal, the mother argues that she had made progress with her substance-use treatment and was testing negative for illegal substances. She also argued that "[w]ithin a reasonable amount of time" she would have adequate housing for the children. For those reasons, the mother maintains the district court erred in concluding the children could not be returned to her custody.

We conclude there is clear and convincing evidence that the children could not be returned to the mother's custody at the time of the termination hearing. At the time of the hearing, the mother was working part time, did not have a vehicle, and was living in a one-bedroom apartment with three other people. While the mother claimed she had been approved for four-bedroom housing, it would not have been available until, at the earliest, several weeks after the termination hearing. Additionally, the mother had not progressed beyond supervised visits with the children and had difficulty caring for all of the children on her own during the supervised visits. But more importantly, the mother had not ever completed a mental-health

---

last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

evaluation and had not shown progress in the work involved to be a caretaker. She participated in few of the children's appointments and provided minimal support for the children throughout the case.

Despite having over one year to resolve the issues that brought the children to HHS's attention, the mother is still not in a place to be a safe, stable caregiver to the children. *See In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020) ("Our legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." (cleaned up)). We conclude the State proved grounds for termination by clear and convincing evidence under Iowa Code section 232.116(1)(f) as to the children born in 2014, 2015, 2019, and 2021, and section 232.116(1)(h) as to the children born in 2022, 2023, and 2024.

2. *Best interests.* The mother next argues that termination is not in the children's best interests because she has a strong bond with the children and because termination would likely lead to the children being split up in separate homes.

In considering the children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "If the children have been placed in foster care, we consider the extent to which they have become integrated into that family." *M.W.*, 876 N.W.2d at 224; *see also* Iowa Code § 232.116(2)(b). "[W]e may also consider statements of foster parents or relatives with whom the children have been placed." *M.W.*, 876 N.W.2d at 224; *see also* Iowa Code § 232.116(2)(c). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn

to be a parent and be able to provide a stable home for the child." *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (cleaned up).

After the children were removed from their parents' custody, they were split between three placements. All three placements testified at the termination hearing. As the district court aptly noted,

> The Court had the opportunity to observe all three of the children's placements testify at the termination trial and found the placements credible, including when testifying about the harm that the parents have caused and continue to cause the children by their failure to participate in their lives. During their testimony, the placements tearfully testified regarding the harm that the parents continue to cause the children by their failure to provide for them, make consistent progress, and participate in visits. The Court finds that the parents have not demonstrated that they will ever be able to provide long-term, stable care. Throughout the history of this case, both parents have consistently shown a lack of interest in their children's lives by frequently missing important events, including school functions, medical appointments, and visits. In contrast to the placements, it is unclear to the Court whether the parents are bonded with the children, particularly the younger ones.

We agree with the juvenile court. While it is extremely unfortunate that these children may be separated from each other because of the termination of their parents' rights, termination is nevertheless in the children's best interests. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) (noting that while "wherever possible brothers and sisters should be kept together," the court's "paramount concern . . . must be the child's best interests."). These children have done well in their current placements, and they deserve the safety and stability they will only achieve through termination of parental rights. We conclude the State has proven by clear and convincing evidence that termination is in the children's best interests.

**B.    Father's Appeal.**    Although the father consented to the termination of his rights to the youngest child, he now appeals the juvenile court's order terminating his rights to all seven children under Iowa Code section 232.116(1)(e), (f), and (h).  Like the mother's appeal, we choose to address subsections (f) and (h).  The father challenges only the final element of both subsections: that the children could not be returned to his custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

We conclude the State proved by clear and convincing evidence that the children could not be returned to the father's custody at the time of the termination hearing.  As the father acknowledged, he was largely absent from this case for almost one year.  Even after he started participating in this case, the HHS social worker testified that his visitation was not consistent, had "been extremely limited," and she was "not sure that [the father] knows what each of [the children] need on a day-to-day basis."  He had not progressed beyond supervised visits and had not attended any of the children's appointments.  The father had not completed the work on his home to make it suitable for the children to safely live there, including putting doors on the kitchen cabinets.

Additionally, the father did not comply with the juvenile court's order to undergo mental-health and substance-use evaluations until shortly before the termination hearing.  He was also not participating in the recommended substance-use treatment.  While the father underwent a mental-health evaluation, this evaluation did not discuss his significant diagnoses of schizophrenia and bipolar disorder.  It is not clear whether the father disclosed those diagnoses to his evaluator, and it is also unclear what impact these diagnoses have on the father's day-to-day life.  In any event, the father

had not participated in any mental-health therapy. He also had not completed anger management classes as ordered.

Further, the father had quit his job shortly before the termination hearing. While he purportedly had another job lined up, he had not yet started. The father was also recovering from a recent hand surgery. It is unclear whether he would be able to work or care for the children on his own until his hand healed. The father had recently been arrested twice for driving while barred, still did not have a license, and did not know how long it would be before he could legally drive again. Though the father had a vehicle, it was not big enough to accommodate all seven children.

While the father has taken positive steps since his release from jail, this progress is too little too late. The father has not demonstrated that he can be a safe and stable caregiver to these children, nor has he shown that he is capable of taking care of the children on his own. For the above-stated reasons, the State proved grounds for termination of the father's parental rights to the children under Iowa Code section 232.116(1)(f) as to the children born in 2014, 2015, 2019, and 2021, and section 232.116(1)(h) as to the children born in 2022, 2023, and 2024.

## IV. Conclusion.

Upon our de novo review, we conclude the State proved grounds for termination of both the mother's and father's parental rights to all seven children by clear and convincing evidence. The State also proved by clear and convincing evidence that termination of the parents' rights was in the children's best interests. For those reasons, we affirm.

**AFFIRMED.**