# IN THE COURT OF APPEALS OF IOWA

No. 16-0321
Filed April 6, 2016

**IN THE INTEREST OF W.S. AND D.S.,**
**Minor Children,**

**L.H., Mother,**
Appellant,

**W.S., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

The mother appeals from an order (1) denying the guardian ad litem's petition to terminate the parental rights of the father of her two children and (2) granting the State's motion for a bridge order.  **AFFIRMED.**

Meegan M. Keller of Keller Law Office, P.C., Altoona, for appellant mother.

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellee father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Andrew J. Tullar of Tullar Law Firm, P.L.C., Des Moines, for minor children.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

This case was initiated in March 2013 when W.S. and D.S. were removed from their mother, Lindy's, care due to Lindy's heroin use. The children were placed with their father, William. The children were removed from William's care in February 2014 and placed with a relative after William tested positive for methamphetamine. In May 2015, the children were returned to the custody and care of their mother after she had established sobriety and the ability to care for the children. Although the children had been returned to the custody and care of their mother, the case remained open. In October 2015, the State filed a motion for a bridge order.[1] The motion was supported by the Iowa Department of Human Services (hereinafter "IDHS") and William. In response, the guardian ad litem filed a petition to terminate William's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f). Following a contested hearing, the juvenile court granted the motion for entry of a bridge order and denied the guardian ad litem's

---

[1] Under Iowa Code 232.103A (2015),

> [t]he juvenile court may close a child in need of assistance case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order, if all of the following criteria are met:
> a. The child has been adjudicated a child in need of assistance in an active juvenile court case, and a dispositional order in that case is in place.
> b. Paternity of the child has been legally established, including by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law.
> c. The child is safely placed by the juvenile court with a parent.
> d. There is not a current district court order for custody in place.
> e. The juvenile court has determined that the child in need of assistance case can safely close once orders for custody, physical care, and visitation are entered by the district court.
> f. A parent qualified for a court-appointed attorney in the juvenile court case.

petition for the termination of William's parental rights. The mother timely filed this appeal, contending the juvenile court should have terminated the father's rights, should not have entered the bridge order, or, in the alternative, should not have denied her request for sole custody.

"In termination of parental rights cases, we review the proceedings de novo." *In re M.W.*, ___ N.W.2d ___, 2016 WL 852001, at *5 (Iowa 2016). "There must be clear and convincing evidence of the grounds for termination of parental rights." *Id.* Evidence is "clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *Id.* Our review of the juvenile court's order follows the well-established three-step analysis set forth in the code, which we need not repeat in full herein. *See* Iowa Code § 232.116(1)-(3); *M.W.*, ____ N.W.2d at ____, 2016 WL 852001, at *5.

We agree with the juvenile court that the guardian ad litem failed to prove the grounds authorizing the termination of the father's parental rights pursuant to section 232.116(1)(e). As relevant here, the petitioner was required to prove the parent has "not maintained significant and meaningful contact with the child during the previous six consecutive months. . . ." Iowa Code § 232.116(1)(e)(3). Here, the father exercised regular visitation with the children during the relevant time period and made an effort to communicate with the children when the children were with their mother. There is strong evidence the mother interfered with the father's communication with the children. For example, on one occasion, the father messaged one of the children on Facebook. Immediately thereafter, at the instruction of the mother, the father was blocked from the child's

Facebook account. The father testified he did not want to contact the children on their respective cell phones because it might put the children in conflict with the mother. Under these circumstances, we conclude the father has maintained significant and meaningful contact with the children.

The petitioner also failed to prove the grounds for termination of the father's parental rights pursuant to section 232.116(1)(f). As relevant here, the petitioner was required to prove "that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." Iowa Code § 232.116(1)(f)(4). "A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance." *In re E.R.*, No. 14-1816, 2015 WL 162177, at *2 (Iowa Ct. App. Jan. 14, 2015). The mother argues the children could not be returned to the father's care because the father never progressed past semi-supervised visits. The argument is spurious. The evidence showed, and the juvenile court found, the father never progressed past semi-supervised visits because the service providers interfered with the father's visitation by not leaving during the visitation period and not "allowing the parent and the child to interact on their own without outside influences." The juvenile court found this was contrary to the court-ordered visitation. The juvenile court found the father would have progressed to unsupervised visits at the time of the termination hearing but for the service providers' interference with the father's visitation. We agree with these findings and adopt them as our own. In addition, the evidence showed the father had completed substance abuse treatment, demonstrated

sobriety, and demonstrated the ability to provide for the children while in his care without creating the risk of adjudicatory harm. There is not clear and convincing evidence the children could not be returned to the father's care at the time of the termination hearing.

Even if the grounds for termination had been proved, termination of the father's parental rights is not in the best interests of the children. When considering the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We consider both the long-term and immediate interests. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Insight into what the future likely holds for a child if returned to a parent is gained from evidence of the parent's past performance because it may be indicative of the quality of future care the parent is capable of providing. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012); *J.E.*, 723 N.W.2d at 798. The children are age 13 and 11. They have had contact with their father throughout their lives, including residing with him for one year after the children were removed from Lindy's care. There is a bond between the father and the children. The father poses no risk of imminent harm to the children. Further, in the event there is a risk of harm to the children, they are old enough to self-protect.

With respect to the bridge order, the juvenile court's decision to grant the motion for a bridge order was well-reasoned and appropriate given the family's circumstances:

The Court acknowledges the difficulties in this case and the various concerns voiced by the Department, the mother, and the father. The parents have not shown the ability to get along with each other. The mother has not encouraged the father's relationship or even contact with the children. The father has not cooperated with the Department and is still at semi-supervised visits. However, while these are all valid concerns, the Court does not believe that such concerns justify the juvenile court's continued intervention in the lives of this family. The children are placed with the mother in an apparent safe and stable environment. The father is at semi-supervised visits so he has progressed to having some "unsupervised" contact with the children, and the Court believes he would be at completely unsupervised visits by this time if the parties had complied with the Court's Order in May and initiated truly semi-supervised visits at that time. Further, the children are old enough to self-report any problems and have shown the willingness to do so. Life is not perfect nor is it always easy as this case demonstrates, yet the boys are safe, they have two parents who love them, and the Court does not believe that the Department has anything further to offer this family that they cannot get on their own or that cannot be achieved with an appropriate visitation Order. It is time for the parents to become adults and to accept responsibility for their children and the circumstances which they have created, and to set aside their own petty differences and to parent with the best interest of the children in mind.

The motion was supported by the State, by the service providers, and by the father. We agree with the juvenile court's findings and conclusions related to the bridge order, and we adopt them as our own.

The order of the district court is affirmed in its entirety.

**AFFIRMED.**