# IN THE COURT OF APPEALS OF IOWA

No. 16-0855
Filed August 17, 2016

**IN THE INTEREST OF B.G. AND A.G.,**
**Minor Children,**

**C.S., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton,

District Associate Judge.



        A mother appeals from the termination of her parental rights to her

children. **AFFIRMED.**



        Jennifer M. Olsen of Olsen Law Office, Davenport, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee State.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals from the termination of her parental rights to her children, B.G. and A.G.[1]  She argues termination was not in the best interests of her children and statutory factors weigh against termination.  We disagree and therefore affirm.

## I.  Background Facts and Proceedings

At the time of the termination hearing, B.G. was eight years old and A.G. was three years old.  The family first came to the attention of the Iowa Department of Human Services (DHS) in July 2014, due to allegations the children had witnessed the father abusing the mother.  A DHS investigation revealed the mother was unemployed and homeless.  A.G. was in the mother's care, but B.G. was staying with a friend of the maternal grandmother.  The mother denied any physical violence between her and the father.

B.G. has remained placed out of the mother's care since July 2014.  A.G. was placed with the child's godmother in August 2014 and has not been in her mother's care since.  On December 16, 2014, the juvenile court adjudicated B.G. and A.G. to be children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(1) and (6)(c)(2) (2013).  The CINA adjudications were based upon the court's finding that the ongoing domestic violence between the parents placed the children's physical and emotional health at risk.  The juvenile court transferred custody of the children to DHS for placement in foster care.  In addition to being placed in foster care, both children were placed in the custody of a maternal aunt for a significant period of time.  However, the court returned

---

[1] The father's parental rights were also terminated, but he has not appealed.

them to foster care when the aunt determined she was unable to care for them long-term.

On May 3, 2016, the juvenile court terminated the mother's parental rights to B.G. pursuant to sections 232.116(1)(d) and (f) and 232.117 (2015), and to A.G. pursuant to sections 232.116(1)(d) and (h) and 232.117. The juvenile court noted the mother was "extremely inconsistent" in her visitation with the children until after the State filed the petition for termination of her parental rights, and she had turned down numerous referrals to housing programs offered to address her homelessness. The juvenile court also stressed the more central issue at hand—the mother's ongoing relationship with the father. Despite the fact the mother claimed she had little contact with the father, the court listed a number of facts that belied her claim: the mother admitted the father assaulted her; she would, at times, call DHS from the phone number used by the father; she went on an out-of-state trip with him; she worked at the same job as the father for several weeks; she was with the father when he was arrested in March 2016 for assaulting another girlfriend; she had received calls, during visits with B.G. and A.G., from the father's other girlfriends who assumed the mother knew where he was; she took the father's calls from jail; and she recently agreed to drop a no-contact order—something she had done on multiple occasions in the past—in order to assist the father with his criminal cases. The juvenile court found the mother was a victim of domestic violence and had proven unable to protect herself or end her relationship with the father. The court concluded, "[The mother] is so enmeshed with [the father] that she cannot see that she has chosen him over her children and their safety."

The mother appeals.

## II. Standard of Review

We review termination proceedings de novo, and we will affirm if any statutory ground is supported by clear and convincing evidence in the record. *See In re M.W.*, 876 N.W.2d 212, 219, 222 (Iowa 2016).

## III. Analysis

The controlling framework for termination-of-parental-rights cases is well-established and need not be repeated. *See id.* at 219–20 (setting forth the applicable "three-step analysis"). The mother does not contest the statutory grounds for termination; she maintains only that termination was not in the children's best interests and statutory factors weigh against termination. *See* Iowa Code § 232.116(2), (3). She argues termination is contrary to her children's best interests because B.G. and A.G. are bonded to her, a relative may be approved to adopt the children, and termination is likely to cause B.G. to exhibit negative behavior.[2]

Upon our de novo review, taking into account the relevant factors set forth in Iowa Code section 232.116(2) and (3), we find termination of the mother's parental rights is in the best interests of B.G. and A.G and no factor weighs sufficiently against termination. Throughout the pendency of the case, the mother lacked stable housing and employment. Although she was making some

---

[2] The mother suggests two alternatives she believes would better serve her children's interests. First, she argues the juvenile court should have granted her additional time to demonstrate her ability to parent B.G. and A.G. safely. In the alternative, she argues the court could have established a guardianship so that B.G. and A.G. could be placed with relatives and the mother could maintain her legal relationship with the children. The mother also presented these alternatives to the juvenile court at the termination hearing.

progress in these areas as the termination hearing approached, she had not proven any likelihood of sustained success. Furthermore, while the mother testified at the termination hearing she understood the father had abused her and it was not safe for B.G. and A.G. to be around him, her words do not find support in her actions. DHS reports reveal the mother maintained a relationship with the father throughout the pendency of the case. We agree with the juvenile court's conclusion the mother's unwillingness to separate herself from the father posed an ongoing risk to her children. Both children are adoptable, and termination will allow them to achieve permanency. *See In re A.M.,* 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")).

We also find no statutory factors weigh against termination here. B.G. and A.G. have been placed out of the mother's care since July 2014 and August 2014, respectively. As a result, the bonds between the mother and the children are no longer sufficiently strong to make termination detrimental to the children. *See* Iowa Code § 232.116(3)(c). Furthermore, B.G. and A.G. were in a foster home at the time of the termination hearing, not in the legal custody of any relative. *See id.* § 232.116(3)(a).

For these reasons, we affirm the juvenile court's termination of the mother's parental rights to her children, B.G. and A.G.

**AFFIRMED.**