**IN THE COURT OF APPEALS OF IOWA**

No. 16-2186
Filed February 22, 2017

**IN THE INTEREST OF T.K.,**
**Minor child,**

**J.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Jessica R. Noll of Deck Law, L.L.P., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and David M. Van Compernolle, Assistant Attorney General, for appellee State.

Joseph W. Kertels of Juvenile Law Center, Sioux City, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2013. She contends (1) the State failed to prove the grounds for termination cited by the district court, (2) termination was not in the child's best interest, and (3) she should have been granted additional time to work towards reunification.

*I.* The district court terminated the mother's parental rights pursuant to several statutory grounds, including Iowa Code section 232.116(1)(h) (2016), which requires proof of several elements including proof the child cannot be returned to the parent's custody. Our de novo review of the record reveals the following facts.

When the child was approximately six months old, the department of human services investigated drug use by the parents. The mother denied using methamphetamine but admitted she had smoked marijuana in the past and taken Adderall that was not prescribed to her. The department developed a safety plan and initiated services to assist the family.

Several months later, the department investigated allegations that the mother and father were using marijuana and methamphetamine while caring for their child and were not supervising or feeding the child appropriately. Both parents admitted to using methamphetamine, with the mother's usage occurring just two days earlier. The department also learned of a "significant history of domestic violence" by the father against the mother. The parents again agreed to a safety plan and safety services and the mother was placed on a waiting list for inpatient treatment. Meanwhile, the child was removed from the parents' care.

The mother made progress in addressing her addictions and the child was returned to her care. In time, she backslid and the child was removed again. The department described the circumstances as follows:

> This family has been involved with the child welfare system since January 2014. In the nearly three years that have elapsed, neither parent has consistently addressed the issues which triggered [the child's] involvement in the child welfare system. In fact the situation deteriorated to a point where the child was removed and placed back into relative care over seven [months] ago. In the seven months since removal, neither parent has consistently demonstrated the ability to provide 24/7 care for [the child.]

It is true the mother remained sober for several months preceding the termination hearing and appeared to have severed ties with the abusive father. She also reengaged with reunification services in the month preceding the termination hearing, leading a service provider to characterize her as "motivated" and "responsibl[e] for her actions." But her delay in taking advantage of the full panoply of services also delayed potential reunification with the now three-year-old child. As the service provider testified, it would "[p]robably" take "a couple years" before the mother would become stable enough to have the child returned to her, despite the two years of services already afforded her.

The mother did not dispute this testimony. She conceded she began attending treatment sessions consistently just "two months" before the termination hearing and she failed to complete a mental health evaluation until a month or two before the hearing. When asked why she waited until the termination petition was filed "to do anything," she responded "[i]t did not seem real to me."

This is a classic case of too little, too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). We conclude the mother was not in a position to have the child returned to her custody.

*II.* Termination must be in the child's best interests. *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016). There is no question the child shared a bond with her mother; she hugged the mother at the beginning of visits and showed signs of distress at the end. But the mother squandered the several opportunities she was afforded to safely parent the child, raising doubts about her long-term ability to care for her. We conclude termination was in the child's best interests.

*III.* The mother contends she should have been granted six additional months to move towards reunification. *See* Iowa Code § 232.104(2)(b). The district court denied the request in light of the mother's "only recent[]" "re-engagement with services," her "past conduct and lack of follow-through," and the harm to the child of an additional delay. We concur in this reasoning.

We affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**