**IN THE COURT OF APPEALS OF IOWA**

No. 17-0264
Filed May 3, 2017

**IN THE INTEREST OF A.H. and A.H.,**
**Minor Children,**

**A.H.-W., Father,**
         Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Nancy S. Tabor,

Judge.


        A father appeals from the order terminating his parental rights.

**AFFIRMED.**


        Matthew D. Hatch of Hatch Law Firm, P.C., Bettendorf, for appellant

father.

        Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for appellee State.

        Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, for minor

children.


        Considered by Danilson, C.J., Potterfield, J., and Mahan, S.J.*  Tabor, J.,

takes no part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

A father appeals from the order terminating his parental rights to his two children. We affirm because a ground for termination exists, termination is in the best interests of the children, and no exception precludes termination.

We review termination proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although we are not bound by the fact-findings of the juvenile court, we do give them weight, particularly when evaluating witness credibility. *See id.*

With respect to the older child, born in April 2010, the court terminated the father's rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2016), and with respect to the younger child, born in June 2015, pursuant to section 232.116(1)(d) and (h). The father asserts there is not clear and convincing evidence to support termination under subparagraphs "f" and "h," arguing there is no finding the children have been "removed" from his custody as that term was interpreted in *In re C.F.-H.*, 889 N.W.2d 201, 203-08 (Iowa 2016). We need not address this argument because there is clear and convincing evidence supporting termination under section 232.116(1)(d). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence.").

Section 232.116(1)(d) allows the juvenile court to terminate parental rights if both of the following have occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has

previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstances which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Here, the children came to the attention of the department of human services (DHS) in June 2015, and a child abuse investigation was founded as to denial of critical care due to the father's use and sale of marijuana when the older child was present. When the youngest child was born in June 2015, the father was ousted from the hospital for threatening the maternal grandmother. During the child abuse investigation, it was learned the "father had perpetrated severe domestic abuse against the mother, and physically assaulted [the older child] during physically disciplining the child." The father reported "whooping" the older child as a disciplinary practice. In an August 21, 2015 service plan, the Family Safety, Risk and Permanency (FSRP) worker wrote:

There is a presence of physical and emotional abuse of the child. The oldest child has also witnessed domestic violence between the father and mother. The child reported that her dad would give her "whoopings" for wetting the bed and being bad. The child has been affected emotionally from witnessing domestic violence and would benefit from consistent play therapy.

In a forensic interview, the older child reported her father hitting her hard with his hand and leaving red marks. The guardian ad litem reported that on one occasion the child had been pushed out of the way while the father was assaulting the mother and the child's elbow was injured.

On October 8, 2015, the children were adjudicated CINA under section 232.2(6)(b), which defines a child in need of assistance as one "[w]hose parent, guardian, other custodian, or other member of the household in which the child

resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." The court wrote:

> Specifically, the Court FINDS that based on the exhibits provided in court, there is clear and convincing evidence that the oldest child has witnessed and been hurt during domestic disturbances where violence was used by the father against the mother. There is a long history of the father being violent, and he has had several arrests in incidents where police were called because his behavior was so out of control. There are reports that the father has been selling marijuana out of his house when the children are there. It is clear from the reports that there are issues regarding the mental capacity of each parent to properly parent. The mother has remained in what is an abusive relationship, both emotionally and verbally, for almost eight years, much of the abuse being administered against her in front of the children. The father's history demonstrates violent outbursts against the mother and complete disrespect for authority. There was a reported incident where the father went to the mother's employment, grabbed her by the arm, drug her down to a hallway, threatened her, and the next day she appeared at work wearing heavy makeup to hide a bruise. This is just an example of the type of behavior that's been reported to be administered by [the father] against [the mother]. There is currently an order of protection in existence, ordering [the father] to refrain from any contact with [the mother]. There is a police report wherein [father] got out of a car and assaulted a man while the mother and the oldest child sat in the car.

The father's appeal brief acknowledges the adjudicatory order includes a finding that the "oldest child has witnessed and been hurt during domestic disturbances where violence was used by the father against the mother." He argues, however, that this is not sufficient basis for a termination of parental rights under section 232.116(1)(d). We disagree.

As noted above, to terminate under subparagraph "d," the court must have "previously adjudicated the child to be a [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents."

> But "physical abuse or neglect" and "abuse or neglect" are terms of art in this context. Within chapter 232, "physical abuse or neglect" and "abuse or neglect" mean "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." [Iowa Code] § 232.2(42).

*In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (concluding an adjudication under section 232.2(6)(b) was not adequately supported). In *In re T.S.*, 868 N.W.2d 425, 435-36 (Iowa Ct. App. 2015), this court found insufficient evidence to support a termination of parental rights under section 232.116(1)(d) because the CINA adjudication under section 232.2(6)(b) was proper under the "imminently likely" clause and no finding or record evidence of nonaccidental physical injury existed.

In contrast, this case involves an adjudication under subsection 232.2(6)(b) with evidence of nonaccidental physical injury to the older child as a result of the father's actions. In addition to the court's finding of harm to the child, in a March 2016 correspondence, the older child's therapist referred to the father's "severe punishment" of his child, the child's fear of him, and his violent behaviors directed at the child and her mother. The older child reported being hit by her father hard, leaving marks, and the child expressed fear of her father.

The record also provides ample evidence that the father was offered services but the threat of his violence remains more than a year after the juvenile proceedings began. The father was arrested for his threatening behavior at a March 2016 review hearing. He was dismissed from a batterer's education program (BEP) for threatening behavior toward another person during a session. A January 11, 2017 report to the court noted the father's face-to-face parenting

sessions "had been suspended due to [the father's] threats toward the provider and others."

As found by the juvenile court:

> The father has been offered and received many services including visitation, BEP, mental health evaluations, parenting instruction, transportation services from his therapist, and individual services on a pro bono basis. Despite the receipt of these services the children are unable to be returned to his care or home without exposing them to adjudicatory harm. The original permanency goal was for the children to be reunified with both parents. Since that time the goal has now changed due to reunification with the mother . . . .
>
> The father is still unable to handle the responsibility and needs of []his children. He still demonstrates even in court at this hearing that he does not understand the emotional trauma that he has inflicted on his oldest child, still does not understand that parenting by "fear" is unacceptable, and still is angered when the child expresses joy and pride with gifts from other family members. He still is clearly angry and upset with the children's mother evidenced by his statements and demeanor in court.
>
> The [oldest] child has flourished since the contact with her father has been eliminated or restricted. Her emotional and psycho-social growth has been profound. Her bond with her father was a "trauma bond" as admitted by the father's own therapist. The youngest child has not developed a strong bond with the father. The father blames the Department of Human Services and the system. He, however, has yet to accept that the bond was disrupted due to his own extreme violent and obstructive behaviors that were harmful to the children.

We agree with the juvenile court's conclusion that termination is warranted under section 232.116(1)(d) because

> [t]he oldest child has been adjudicated to have been physically abused or neglected by the acts of her father's violence toward the mother resulting in physical and emotional harm to her. The youngest child is a member of the same family as the older child and subsequent to the father receiving services the circumstances still exist.

The father argues that even if grounds for termination of his parental rights exist, it is not in the children's best interests to do so because they are bonded

with him and are in the care of their mother. While the statute provides discretionary grounds to avoid termination of parental rights, *see* Iowa Code § 232.116(3); *M.W.*, 876 N.W.2d at 225, this record does not support the father's claims. The bond between father and the oldest child, if any, was one of trauma, and little bond has occurred between the father and the youngest child. The department recommended termination of the father's parental rights, as did the guardian ad litem.[1] Termination of the father's parental rights will allow the children to experience physical and emotional safety. We affirm.

**AFFIRMED.**

---

[1] The guardian ad litem's January 2017 report to the court stated, in part:

> While I am ordinarily reluctant to recommend termination of parental rights in a case where the other parent is retaining custody of the child(ren), I believe we need to be especially cognizant of the emotional trauma that [the father] has inflicted, particularly upon [the oldest child]. [She] has been clear to multiple parties that she does not want to see her father again. I can only conclude that [she] has experienced a very significant level of trauma and anxiety that she would be so firm and unequivocal with multiple adults in her life over multiple months. I believe it is in [the oldest child's] best interest to know that she will not ever be required to visit her father again. I believe we need to prioritize [her] emotional safety over [the father's] parental rights.