# IN THE COURT OF APPEALS OF IOWA

No. 17-1124
Filed September 13, 2017

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**M.K., Father,**
    Appellant,

**T.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

Parents appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Karmen R. Anderson of The Law Office of Karmen Anderson, Des Moines, for appellant father.

Shane P. O'Toole of Law Office Shane P. O'Toole, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

"On February 6, 2016, the mother of M.M., born in late 2014, left the child with his father, stating she would return the next day for M.M. She did not." *See In re M.M.*, No. 16-1685, 2016 WL 7395788, at *1 (Iowa App. Dec. 21, 2016) (affirming the juvenile court's order placing the child in the care of other suitable persons, following an appeal by the State). The father contacted the Iowa Department of Human Services (DHS) four months later and stated "he 'did not care to keep the child.'" *Id.* The father was "stressed by [the child's] behaviors and had concerns that [the child] was not actually his biological son." "The father met with a DHS child protective worker the next day, gave the worker the mother's contact information, and left M.M. in the care of the DHS." *Id.*

The child's therapist reported that since being left in the care of the DHS, the child had

> lived in [three] different foster homes. He was first placed with his mother's sister and then with his mother's cousin. He lived at each placement for about a month and a half. It was reported that the removal from aunt and cousin was voluntary, and they reported they could not handle [the child's] behaviors. . . . [The child] has been living in a non-kinship care foster placement since [September 2016]. [The child's foster] mother reports that [the child] used to panic when the worker picked him up for visits, but he has been doing better. [The child] also has some problems with anger, and his foster mother reports that she does not think [the child] knows what to do when he gets mad. She believes that [the child] gets frustrated because he cannot communicate his needs. [The child's] speech is delayed, and he does not yet use words to communicate. He still babbles as his main form of communication. Foster mom reports that she is working on baby sign language with him on her own to help him communicate. There are concerns about [the child's] attachment since he has changed placements so often and has had several caregivers.

Services were offered to the parents for reunification; the mother did not participate. The father, though he participated in visits with the child and some of the child's therapy sessions, did not seem to truly understand why the DHS continued to be involved in his life. Although he was the one to leave the child with the DHS, he believed the child's attachment issues were caused by the DHS. He did not believe the child needed therapy or had any behavioral issues.

Due to the parents' lack of participation and progress, the State sought termination of the parents' parental rights. A termination-of-parental-rights hearing was held in April 2017. Thereafter, the juvenile court, utilizing the statutory framework of Iowa Code chapter 232 (2017), issued a thorough order determining the parents' parental rights should be terminated. *See In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016) (discussing the three-step analysis the juvenile court must employ in termination-of-parental-rights proceedings). The court found the State established the ground for termination under section 232.116(1)(h) as to both parents by clear and convincing evidence, summarizing:

> Despite the extensive services offered, neither parent has corrected the situation which led to the removal and subsequent adjudication. The court notes this case is unusual and the parenting deficiencies are not as obvious as a parent who repeatedly tests positive for methamphetamine; however, the lifelong impact and consequences of their parenting deficiencies are no less serious and likely more difficult to remedy. The child's therapist has indicated the child's inability to form healthy attachment is directly attributable to parenting by the father and the mother. Both parents have failed to take any accountability for the impact their inadequate parenting has caused this child. Neither parent has demonstrated an interest in understanding the child's emotional needs or his need for stability or consistency. The father has clearly stated he would not have the child continue to engage in therapy if the child was in his care. The mother has never even made the effort to contact the child's therapist. The child's therapist indicated it is crucial for the child to have a stable environment and the longer permanency is

delayed the harder it will be for him to form healthy attachments, both now and later in life. The child in interest cannot be returned to the custody of the child's parents as provided in Iowa Code section 232.102 at the present time due to the parents' inability or unwillingness to understand and provide for the child's basic needs for a nurturing, stable and safe home.

The juvenile court also determined the best-interest framework as laid out in section 232.116(2) supported the termination of the parents' parental rights:

Unfortunately, the safety concerns that led to removal continue to exist today as neither parent has taken accountability for their parenting deficiencies which have resulted in this child being unable to form healthy attachments. His behaviors can be so extreme that two different families gave notice they were unable to continue to care for him. Yet the father blames those behaviors on the DHS brainwashing the child or him being tortured in his current home. The mother has not participated in any services recommended. The father has only participated in visitation, after paternity results were learned, and child-parent psychotherapy which he does not believe is needed and has failed to attend for the last month. The parents' lack of meaningful participation in services, including the child's services, shows an inability or unwillingness to make necessary changes to have the child placed in their care. Case law directs us a child's future can be gleaned from evidence of a parent's past performance and motivations.

Finally, the court found that none of the exceptions in section 232.116(3) applied to preclude termination of the parents' parental rights.

Both parents appeal. Upon our de novo review of the record, we find the juvenile court considered all issues now presented on appeal, and this court approves of the court's reasons and conclusions contained in the order terminating the parents' parental rights. *See M.W.*, 876 N.W.2d at 219; *see also In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) ("We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the

credibility of witnesses."). Accordingly, we affirm the juvenile court's order without further opinion. *See* Iowa Ct. R. 21.26(1)(a), (d), (e).

**AFFIRMED ON BOTH APPEALS.**