**IN THE COURT OF APPEALS OF IOWA**

No. 17-1767
Filed January 10, 2018

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**A.K., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Crawford County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Martha A. Sibbel of the Law Office of Martha Sibbel, P.L.C., Carroll, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kara L. Minnihan, Onawa, guardian ad litem for minor child.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

A mother appeals the termination of her parental rights to her child, L.B., pursuant to Iowa Code section 232.116(1)(h) (2017).[1] The mother contests the juvenile court's finding the need for removal would still exist at the end of a six-month extension of time and the determination to terminate the mother's parental rights to L.B. The mother asserts the State failed to show reasonable efforts were made toward reunification.

L.B. was removed from the mother's care on December 15, 2016— approximately two weeks after L.B.'s birth—because the mother was not able to appropriately care for L.B. The mother was not feeding L.B. as frequently and in the amount necessary to promote L.B.'s weight gain. L.B. was readmitted to the hospital about one week after her birth due to dehydration and improper nutritional intake. The mother was also not properly caring for L.B.'s hygiene, causing L.B. to develop sores on her neck. And the mother violated the safety plan by moving into an apartment with her paramour and L.B. despite the requirement she reside with a friend who had agreed to oversee the care of L.B.

After L.B.'s removal, the department of human services (DHS) provided a plethora of services to work toward reunification, including case management; paternity testing; safety services through Boys Town; Family Safety, Risk, and Permanency (FSRP) services; transportation; supervised visitation; and home inspections and treatments for bed bugs. DHS also provided a mental-status

---

[1] The juvenile court also terminated the father's parental rights upon the father's consent. The father does not appeal.

examination and psychological evaluation of the mother. It was determined the mother's full scale IQ is 55.

Despite help from DHS—including placement of charts in the mother's home to help the mother remember things such as when to feed and how to bathe L.B., extended visit times, and individualized help with parenting skills—the mother was not able to progress past fully-supervised visitation. The mother's DHS case manager testified that during visits the mother needed prompting to remember to feed L.B. on time and required direction on how to properly handle L.B. and soothe L.B. when she was crying. The case manager opined due to the mother's lower functioning, inability to retain information respecting L.B.'s care, and reliance on prompting to care for L.B. during visits, the mother is not able to parent L.B. and L.B. could not be safely returned to the mother's care.

L.B. remains small and requires a regular feeding schedule to continue to gain weight and grow. L.B. also has developmental delays and requires special attention and help with developmental tasks—such as practicing sitting up, crawling, and using developmental toys—to get back on track. When attempting to work with L.B. on developmental tasks during visits, the mother needed repeated prompting to persist in a task rather than discontinue the task.

After the termination hearing held September 7 and 21, 2017, the juvenile court entered an order terminating the mother's parental rights to L.B. under section 232.116(1)(h).[2] The court stated:

---

[2] Section 232.116(1)(h) provides there are grounds for termination when the child is three years of age or younger, has been adjudicated a child in need of assistance, has been out of the parent's care for at least six months of the last twelve months or the last

It is clear from the FSRP reports and testimony that when there is any deviation from the "usual," [the mother] cannot figure out how to pivot. [The mother] . . . is a concrete thinker as opined by Psychologist Russel A. Moulton. As such, [the mother] has difficulty reacting to a situation that does not follow the exact pattern of which she is familiar. This is a problem for [L.B.]'s safety as she grows and becomes more mobile, independent, and curious. . . .

FSRP has worked creatively with [the mother] to assist [her] in grasping even the most basic parenting responsibilities. There is a chart that outlines the time as to when feeding is to take place as well as what to do during and after feeding. There is a chart to show how to make a bottle appropriately. There is a chart as to how to bathe a child. . . .

Charts of this nature are good teaching tools if the parent is able to generalize off the chart. [The mother] cannot do this. [L.B.] appeared to be fed only when it was shown on the chart or when prompted. . . .

. . . . There are so many possibilities that cannot begin to be charted on a chart. [The mother] need[s] to learn how to be a parent and be able to be in tune with [her] child and respond to her needs. There is no real evidence to suggest that [the mother] is even close to being able to do that and there is no evidence to suggest that an additional six months of services would be able to teach that inherent parental skill.

The mother appeals. We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The mother does not dispute the first three elements of section 232.116(1)(h) are established—L.B. is under the age of three, has been adjudicated a child in need of assistance, and has been out of the mother's care for more than six consecutive months. Rather, the mother contends the juvenile court should have granted her an additional six months to achieve reunification. Iowa Code section 232.104(2)(b) provides a court may grant an additional six

---

six consecutive months, and there is clear and convincing evidence the child cannot be returned to the custody of the parent at the present time.

months to work toward reunification but requires the court to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

We agree with the juvenile court's finding the concerns present will not be resolved if the mother is granted an additional six months to seek reunification. Unfortunately, the record establishes the mother's lower functioning prevents her from learning the skills necessary to respond to L.B.'s needs in the manner required to ensure L.B.'s safety and to nurture L.B.'s growth. L.B. came to the attention of DHS because she was malnourished due to the mother's inability to properly feed her. At the time of the termination hearing, the mother admitted she still refers to the feeding chart to remember the appropriate times and amounts of food to provide L.B. As the juvenile court noted, there are a number of parenting scenarios that cannot be listed on a chart. The mother has not shown she has the ability to safely parent L.B. without constant prompting and direction from service providers. L.B. could not be returned to the mother's care at the time of the termination hearing, and the record does not establish an additional six months would provide relief from the concerns for L.B.'s safety.

L.B. deserves permanency in an environment that will ensure her safety and allow for her "long-term nurturing and growth." Iowa Code § 232.116(2). The mother is not able to provide such an environment. We therefore find the State made reasonable efforts toward reunification, there are grounds for termination under section 232.116(1)(h), termination of the mother's parental rights is in L.B.'s best interests, and granting six additional months will not

alleviate the concerns to L.B.'s safety or the need for termination of the mother's parental rights.  We affirm.

**AFFIRMED.**