**IN THE COURT OF APPEALS OF IOWA**

No. 18-0101
Filed April 18, 2018

**IN THE INTEREST OF N.J., N.J., and M.J.,**
**Minor Children,**

**M.J., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan C. Cox, District

Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Jesse A. Macro Jr. of Macro & Kozlowski, L.L.P., West Des Moines, for

appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for

minor children.

Brent M. Pattison of Drake Legal Clinic, Des Moines, attorney for Ne.J.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The father appeals the termination of his parental rights to his children Ne.J., born in November 2004; Na.J., born in March 2007; and M.J., born in May 2011.[1] The father's rights were terminated pursuant to Iowa Code section 232.116(1)(d), (f), and (i) (2017). The father contends termination is not in the best interests of the children and placement with paternal family members was not properly considered.

### I.      Background Facts and Proceedings.

In August 2016, Ne.J. and Na.J. disclosed the father's sexual abuse. Ne.J. reported repeated sexual abuse starting at age eight or nine. Na.J. reported repeated sexual abuse during the past two years. Both sisters report witnessing the other sister being sexually abused and their brother witnessing their sexual abuse. M.J. reported being physically abused on a regular basis and witnessing his two sisters being physically abused. The mother reported witnessing the father forcing Ne.J. to perform oral sex in 2011.

All three children were removed and adjudicated children in need of assistance (CINA) in September. They were placed with a paternal aunt until January 2017, when the aunt violated a court order by allowing the father's sister to talk to Ne.J. about the abuse. The children were then placed in their maternal grandparents' custody.

In April, the court ordered M.J. to be placed in a shelter. The maternal grandparents were unable to safely care for M.J. due to his mental-health issues,

---

[1] The mother's parental rights were also terminated. She does not appeal.

and his therapist recommended placement in a shelter. Later, M.J. was hospitalized and then placed in foster care. M.J. was placed at various shelters and foster homes until July 10, when he was placed at Four Oaks, a psychiatric medical institution for children.

From May to August, Ne.J. and Na.J. were placed with a foster family to allow time for their maternal grandparents to learn skills to be able to better meet their needs. The sisters were returned to their maternal grandparents in August, and the maternal grandparents are considering adopting all three children.

In May 2017, the father pled guilty to two counts of assault with intent to commit sexual abuse against his daughters. The father's parental rights were terminated on January 4, 2018 after a hearing held on November 27, 2017.

The father appeals.

## II. Standard of Review.

We review the juvenile court's decision to terminate parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Grounds for termination must be proven by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child[ren]." *Id.*

## III. Discussion.

The father argues termination is not in the children's best interests. *See* Iowa Code § 232.116(2). We consider "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *Id.* The father argues termination is premature because the permanency plan for the children is unknown and termination would create more instability for the children.

At the time of the termination hearing, the maternal grandparents were being considered as a possible adoptive home for all the children. Permanent placement with the paternal grandparents was also a possibility. Termination is still appropriate when an adoptive home has not been secured. *In re T.C.*, 522 N.W.2d 106, 109 (Iowa Ct. App. 1994).

In considering the emotional needs of the children, we note termination gives the children a sense of safety and stability in knowing they will not be returned to their abusive father. Even if their permanent placements are unsettled, they can be certain they will not be subject to the abuse of their father.

The father argues placement with his family members was not properly considered and termination should not occur until his family is properly considered because termination extinguishes placement with his family as an option. "When a court terminates parental rights, there is no statutory preference for placement with a relative." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018).

The Iowa Department of Human Services (DHS) workers testified the paternal family may still be considered as a potential adoptive placement if the family agrees to take steps to better support the children. The record demonstrates the father's family was considered as a potential placement but was not an appropriate home for the children at the time. The children were initially placed with their paternal great aunt. After reports of family members interrogating the children regarding their disclosures of sexual abuse, the court ordered any family member who communicated with the children about the abuse allegations would be held in contempt. Subsequently, the great aunt allowed the father's sister

to talk to the children about the abuse.  The great aunt failed to regularly take the children to therapy and told the children their therapist was a liar.

DHS workers also noted the father's family members did not believe the children regarding their sexual abuse.  Paternal family members were informed of the importance for the children to be believed and validated.  They were asked to engage in therapy to process the sexual abuse by their son and their struggle to believe the children.  Paternal family members have not followed through to educate themselves.  Family Safety, Risk, and Permanency workers noted Na.J and Ne.J. feel they are blamed for their removal and not believed by their father's side of the family.

Termination is in the best interests of the children, and the district court did consider placement with the father's family.  We affirm the district court.

**AFFIRMED.**