# IN THE COURT OF APPEALS OF IOWA

No. 19-0944
Filed September 25, 2019

**IN THE INTEREST OF E.S.,**
**Minor Child,**

**E.S., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Clarke County, Monty Franklin, District Associate Judge.

A father appeals the termination of his parental rights to his seven-year-old son. **REVERSED AND REMANDED.**

Adam M. Stone, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Marc Elcock of Elcock Law Firm, Osceola, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

"He's always taken an interest in [E.S.]." The caseworker testified Elija had a near-perfect record of attending visits with his seven-year-old child. And the interactions were "overall positive" between father and son. Yet the juvenile court terminated Elija's parental rights, finding he failed to maintain significant and meaningful contact with E.S. Because our de novo review reveals inadequate proof of that statutory ground for termination, we reverse the juvenile court order and remand for further proceedings.[1]

The Iowa Department of Human Services (DHS) removed E.S. from the care of his mother, Brittany, in July 2017 based on her drug abuse.[2] E.S.'s father, Elija, was not living in the home with Brittany and E.S. at the time of removal. Elija's participation in the case started in mid-September 2017 when he received notice of the child-in-need-of-assistance (CINA) hearing.

The DHS case permanency plan issued in December 2017 directed Elija to undergo substance-abuse and mental-health evaluations. He completed those evaluations, neither of which recommended further treatment.

In August 2018, Elija began supervised visits with E.S. Elija was a reliable participant. He met four times with the FSRP (Family Safety, Risk, and Permanency) worker alone. And Elija attended thirty of thirty-two visits offered

---

[1] Our court's review of termination-of-parental-rights proceedings is de novo, which means we examine both the facts and law and adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App.1995). The factual findings of the juvenile court do not bind our decision, but we give them weight. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[2] The juvenile court also terminated the mother's parental rights. But she does not appeal.

with his son. During those two missed visits, Elija was hospitalized with a serious heart condition. The FSRP reports consistently noted E.S. was happy to see his father, they exchanged hugs, and Elija provided his son with meals and discussed appropriate topics.

The DHS did have concerns about Elija's use of controlled substances. He tested positive for cocaine and marijuana in August 2018. Elija was honest about smoking marijuana but lied about using cocaine. He said he had been sober for three years but relapsed because of the stress of the CINA case. He asserted he lied because he feared the consequences from the DHS. Elija was on parole for a felony drug conviction and was set to discharge his sentence in March 2020.

The State filed its petition to terminate parental rights in December 2018. The juvenile court held the termination hearing in March 2019. Elija testified he had been involved with his son's life since he cut the umbilical cord in the delivery room. Elija lived with Brittany and helped feed, clothe, and bathe E.S. until the child was about four years old. After Brittany and Elija separated, they had an informal shared-care agreement. Brittany stopped allowing Elija time with E.S. in the months leading up to the DHS involvement with the family.

Elija further explained he was now in a stable relationship with his fiancé Emma with whom he has two daughters. Elija expressed a desire for E.S. to have a relationship with those half-siblings. Elija detailed his health conditions including a peptic ulcer, gastro reflux, and back problems. He explained he suffered cardiac arrest and seizures and went into a coma in February 2019.

The DHS caseworker testified Elija was always respectful and expressed a desire to be a parent to E.S. She acknowledged he had stable housing and was

employed throughout the case. And she acknowledged Elija maintained weekly communication with his son. The worker confirmed Elija purchased meals for E.S. during those visits and occasionally brought gifts for his son. Elija was actively engaged in the visits, according to her testimony. But the worker still favored termination because she had not received a signed certificate indicating Elija had completed a substance-abuse treatment program.

At the close of the termination hearing, E.S.'s attorney and guardian ad litem (GAL) recommended terminating Brittany's parental rights but was more sanguine about Elija's potential for parenting. The GAL said she was "torn" about terminating the father's rights, recognizing he had been involved in the child's life and built a relationship with his son.

In drafting its order, the juvenile court rested its termination decision solely on Iowa Code section 232.116(1)(e) (2018).[3] That provision requires proof of several elements, including the absence of "significant and meaningful contact." That phrase "includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3). On top of financial obligations, this affirmative duty requires continued interest in the child, a genuine effort to complete the responsibilities

---

[3] In addition to paragraph (e) of section 232.116(1), the State's petition cited paragraphs (a), (b), (d), (h), and (i). The juvenile court found the State failed to prove the elements of paragraphs (a), (b), (d), and (i). The court also concluded because the State's petition mistakenly combined the elements of paragraphs (f) and (h), grounding termination on those alternatives would violate the due process rights of the parents. In its response to the petition on appeal, the State cites *In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016), which holds that we may affirm the juvenile court's ruling on any ground properly pled, even if the court relied on a different ground. But the State does not venture to resurrect any of the other grounds pled in its petition. Thus, we consider only the sufficiency of the evidence to support paragraph (e).

prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and that the parents establish and maintain a place of importance in the child's life. *See id.*

The State failed to prove this ground for termination. Elija consistently participated in family time with E.S. He missed only two of thirty-two offered visits. Those absences occurred because of Elija's serious health issues. And Elija did more than just show up. He actively engaged with his son, sharing meals and positive conversation. Elija also provided some material support in the form of clothing and gifts. Elija also completed substance abuse treatment. The evidence shows the father made a genuine effort to complete the responsibilities prescribed in the case permanency plan.

Paragraph (e) of section 232.116(1) is not the proper basis for termination when a parent is making genuine efforts to improve his parenting skills and stay a part of the child's life. *See In re T.A.*, No. 18-1674, 2019 WL478877, at *3 (Iowa Ct. App. Feb. 6, 2019); *In re T.S.*, No. 15-0892, 2015 WL 4641792, at*3 (Iowa Ct. App. Aug. 5, 2015); *In re S.W.,* No. 15-0549, 2015 WL 3635722, at *5–6 (Iowa Ct. App. June 10, 2015). Because the State failed to prove the ground for termination by clear and convincing evidence, we reverse the order terminating the father's parental rights and remand for further proceedings.

**REVERSED AND REMANDED.**