# IN THE COURT OF APPEALS OF IOWA

No. 21-1494
Filed January 27, 2022

**IN THE INTEREST OF M.W., M.W., and M.W.,**
**Minor Children,**

**D.H.-B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Christina M. Shriver, Waterloo, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Tammy L. Banning of Office of State Public Defender, Waterloo, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

A mother appeals the termination of her parental rights to three children, a four year old and five-year-old twins. She contends the State did not prove the statutory grounds for termination and the court should have given her another six months to work toward reunification.[1] After reviewing the record, we reach the same conclusions as the juvenile court and affirm.[2]

The mother, Destiny, began interacting with the Iowa Department of Human Services (DHS) in 2014 and has been receiving voluntary services since before these children were born. Her two older children now live with their father. The concerns throughout the last six years have included Destiny's substance abuse, involvement with violent paramours, founded child-abuse assessments for twice failing to provide adequate supervision, and one founded child-abuse assessment for failure to provide adequate medical care.

In April 2020, the family came to DHS attention when Destiny was arrested for driving drunk with the children in the car. She came away from that incident with charges for second-offense operating while intoxicated, child endangerment, interference with official acts, driving while suspended, and failure to maintain control of a vehicle. At the time, Destiny was on probation for forgery and theft.

The DHS removed the children from Destiny's custody and placed them in foster care. They have remained there throughout the case and are doing well. The foster family is interested in adopting.

---

[1] The children's father is deceased.
[2] Our review is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). We give the juvenile court's fact findings "respectful consideration," but are not bound by them. *Id.*

The children have been out of Destiny's care for fifteenth months. And in that time, Destiny has not succeeded in her reunification goals. For instance, when opening the child-in-need-of-assistance (CINA) case, the juvenile court ordered Destiny to comply with substance-abuse and mental-health programming. She underwent a substance-abuse evaluation in May 2020, receiving a diagnosis of severe alcohol abuse disorder. But she did not complete the recommended outpatient treatment. In a discussion with Destiny's therapist, the DHS worker learned that Destiny was not candid about the circumstances of her children's removal. To monitor her progress, the DHS requested that Destiny participate in random drug testing. She failed to provide samples about half of the time and tested positive for alcohol in December 2020. That test coincided with allegations that she tried to physically attack an ex-paramour's new girlfriend.

That was not the first time Destiny acted with aggression. The DHS was concerned about Destiny's history of domestic violence and asked her to complete a mental-health evaluation. Destiny never obtained that evaluation. At the time of the termination hearing, Destiny had a probation-revocation trial pending and faced several years imprisonment. And during the CINA case, Destiny married Robert. The record shows that Destiny and Robert have a history of assaulting each other. Robert also has a long criminal history and three pending operating-while-intoxicated charges of his own.[3]

That volatile relationship has increased the DHS concerns about Destiny's ability to supervise children. Her visitations have always been supervised.

---

[3] The State presented evidence that Robert continued to drink alcohol to excess while the termination petition was pending.

Unknown to the DHS caseworker, the mother told the family-centered services worker who supervised visits that Robert was approved to be present, which was untrue.

After a hearing, the juvenile court terminated Destiny's rights under Iowa Code section 232.116(1), paragraphs (e), (f), and (*l*) (2021). Destiny appeals.

Destiny first argues the State did not prove the grounds for termination. On that issue, we look for clear and convincing evidence from the State. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). To satisfy that standard, the State's proof must leave us with no "serious or substantial doubts" about the correctness of the juvenile court's conclusions of law. *Id.* When, as here, the court rests its decision on more than one paragraph under section 232.116(1), we may affirm on any supported ground. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We focus on paragraph (f).

Destiny challenges only the fourth element—proof that the children could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *see also M.W.*, 876 N.W.2d at 223–24. She argues she was bonded to the children and maintained an appropriate residence throughout the CINA proceedings.[4]

---

[4] The State argues the mother did not preserve error because at trial, she requested more time rather than the immediate return of the children. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). At the contested termination trial, the mother testified she disagreed with the petition to terminate her rights, so we find error was preserved.

But the home Destiny proposes is not safe for the children, in large part, because it includes Robert. When asked what she would do if the children were returned to her, she testified she needed a bigger place but affirmed that Robert would continue to live with her and the children. She did not agree that his drinking posed a risk to her sobriety or to her children. Robert also testified he has a drinking problem but was not engaged in substance-abuse treatment.

And Destiny continues to lack insight into her own substance abuse. When questioned about testing positive for alcohol in December, Destiny testified, "No, I was not drinking. I had some wine, but I don't know that that [is] consider[ed] alcohol."

The record is replete with evidence that Destiny cannot safely parent the children. In short, she does not recognize the dangers posed by her substance abuse, her involvement with Robert, his substance abuse, or their violent behaviors. We find the State proved the statutory ground for termination.

Finally, Destiny argues the court should have deferred permanency for six months to allow her to work toward reunification. Under section 232.117(5), the juvenile court may order an extension of permanency for up to six months under section 232.104(2)(b) as an alternative to terminating parental rights. *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June 3, 2020). Such an extension is appropriate if the juvenile court can point to "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after that time. Iowa Code § 232.104(2)(b). No such factors exist here. Despite six years of voluntary services and fifteen months out of the home, Destiny offers no realistic prospect

that the children could be safely returned to her care in six months. In fact, it is possible if Destiny's probation is revoked, she will be facing a prison sentence.

Finding no merit in Destiny's contentions, we affirm the termination of her rights to these three children.

**AFFIRMED.**