# IN THE COURT OF APPEALS OF IOWA

No. 23-0903
Filed August 30, 2023

**IN THE INTEREST OF M.N.,**
**Minor Child,**

**S.N., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Sabrina M. Dow, Mason City, for appellant mother.

Brenna Bird, Attorney General, and Will Sales (until withdrawal) and Lisa Jeanes, Assistant Attorneys General, for appellee State.

Jane Wright, Forest City, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her child—born in 2022—under Iowa Code section 232.116(1)(e) and (h) (2023).[1] She challenges the sufficiency of evidence supporting the grounds for termination, argues termination is contrary to the child's best interests due to the closeness of the parent-child bond, and asserts she should have been granted additional time to work toward reunification.

## I.      Background Facts and Proceedings

The mother, who was described in a medical report as having a "very explosive personality," has a history of mental-health issues. Those include bipolar disorder, post-traumatic stress disorder, ADHD, conduct disorder, and oppositional-defiant disorder. She has also been diagnosed with both alcohol- and cannabis-use disorder. In the two years before the child was born, the mother was hospitalized at least three times for her mental health, sometimes with suicidal thoughts but always with anger issues.

Things did not improve after the child was born in May 2022. The parents and child came to the attention of the Iowa Department of Health and Human Services that August because of the mother's poor mental health and the family's unstable living arrangements. After the family was kicked out of the home they were living in, the mother and child moved into a homeless shelter. The mother was then kicked out of the shelter due to her aggressive behavior toward others, including the child, who she swore at and called names. When the parents could

---

[1] The father's rights were also terminated. He does not appeal.

not identify a safe living arrangement for the child, the department obtained an order for temporary removal. The child was then placed in foster care, where he has remained.

From there through late September, the mother's visits with the child did not go well. At the first visit, police officers had to intervene due to the mother's aggressive behavior. At another, the mother said the child wasn't hers and refused to hold him. The mother did not provide things for the child at visits, telling the department that the money she did have "was her vape money." According to one of the department's reports, "[d]uring all interactions [the mother] is nearly always swearing, raising her voice, talking down or arguing with [the father] and the [family-centered services] provider, and struggles to bond with" the child.

The child was adjudicated to be in need of assistance in October. That same month, the mother was taken to the emergency room after drinking a pint of vodka and possibly taking an entire bottle of prescription drugs. While there, the mother admitted to daily use of marijuana. Because of the mother's combativeness, she was placed on an emergency hold and admitted to the hospital. Doctors noted signs of depression and suicidal ideation.

Throughout October and November, the mother regularly missed visits and resisted services. Her mental health continued to be unstable, with concerns also surfacing about her substance abuse. Fast-forward to the permanency hearing in February 2023, the mother did not make any meaningful changes. She continued to no-show for visits, declined to meaningfully participate in services, and evaded drug testing. The mother's housing and employment circumstances also remained unstable. And she took no steps to address her poor mental health. Based on the

mother's lack of progress, the department recommended starting a termination proceeding. The court agreed, and the State filed its petition in short order.

At the termination hearing in May, the mother's only request was that she be given six more months to work toward reunification. She testified that she had been "keeping [her] head straight," even though she was not participating in any treatment or taking medications for her mental-health issues. When asked whether she felt like medication was needed, the mother answered:

> I want to be honest, yes and no at the same time. No for the simple fact I feel like I'm finally getting everything under control. My heads more clear. I am not so stressed other than what's going on with this stuff and with [the father] with the divorce.

Yet the mother testified she was willing to get a mental-health evaluation and take medication if a doctor thought it was necessary. As for housing, the mother said that she had just moved in with a friend, though she didn't know his last name. She testified that not having her "own place" was the only barrier to the child being placed in her custody. While she hoped "to get it accomplished in the next six months," she questioned whether that was "even possible with it just being a single income." But the mother testified, "I'm willing to try my best if I can."

The solution-based services worker testified that, while the mother had made some progress since she and the father recently separated, she still had the same concerns that existed at the beginning of the case. Overall, the worker did not believe the mother was able to resume custody of the child, nor would she be "any time soon." The department caseworker agreed, testifying "the concerns have kind of been the same from the beginning. Her mental health is still not being treated." And while the mother testified about the steps she planned to take, the

caseworker didn't buy it, noting that "at each hearing she has testified the same thing every time that she is going to look into medication, that she is going to look into mental health services and has not followed through."

Following the hearing, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(e) and (h), determined termination was in the child's best interests, and found no permissive exception applied.

## II. Analysis

We apply a three-step analysis in conducting our de novo review of terminations of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). If all three steps support termination, the court considers any ancillary issues raised by the parent, such as whether additional time should be granted. *See* Iowa Code § 232.117(5); *see also id.* § 232.104(2)(b).

### A. Grounds for Termination

The mother challenges the State's proof of both the statutory grounds for termination cited by the juvenile court. We may affirm termination "on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As to termination under section 232.116(1)(h),[2] the mother only challenges the final element—that the child could not be safely

---

[2] The mother's petition on appeal references section 232.116(1)(f). Because the mother only challenges the final element, which is essentially identical to the final element of section 232.116(1)(h), we give her the benefit of the doubt and address her challenge under the proper ground.

returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The mother agreed at the termination hearing that there were still barriers to immediate reunification and that she needed more time. "This amounts to clear and convincing evidence that the child[] could not be returned to her care at the time of the termination hearing." *In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022). And the mother was correct. Her poor mental health created an ongoing risk of adjudicatory harm, and she took no steps to address that issue or others like her substance use, unstable housing, and sporadic employment. We conclude the State met its burden for termination under section 232.116(1)(h).

### B. Best Interests and Statutory Exception

The mother next claims termination is not in the child's best interests, *see* Iowa Code § 232.116(2), due to the closeness of the parent-child bond and detriment resulting from severance. *See id.* § 232.116(3)(c).

Properly considering these arguments step by step and first addressing the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). The defining elements of a child's best interests are safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

The mother has put forth little effort to regain custody of the child. She has not progressed beyond fully-supervised visits, which she inconsistently attended

throughout the case—at one point going two months without a visit. She could not provide stability and permanency for herself, let alone the child, and she has done little to further the child's safety, nurturing, growth, and needs. On the other hand, the child is integrated into a foster home open to adoption. *See* Iowa Code § 232.116(2)(b). The child is thriving in this placement, which has tended to his needs and will provide him with an opportunity for permanency and stability. We conclude termination is in the child's best interests.

As to the permissive exception cited by the mother, Iowa Code section 232.116(3)(c) allows the court to forgo termination when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." The application of a statutory exception to termination, if one exists, is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). And "the parent resisting termination bears the burden to establish an exception." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

The mother simply argues that the evidence "does not show that there was never a close relationship between mother and her child." Even if that were true, the evidence also does not show a bond so close that the child would suffer as a result of termination. The mother presented no evidence on that issue, and it is hard to imagine that termination would be detrimental to the child given his young age, extended removal, and limited contact with the mother. We accordingly conclude this exception to termination does not apply.

## C. Additional Time

To the extent the mother suggests that she should have been given six more months to work toward reunification, she has failed to present any "specific

factors, conditions, or expected behavioral changes which [would] comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" an extension of time. *See* Iowa Code § 232.104(2)(b). "It is not our role to advocate what potential circumstances would warrant an extension on the [mother's] behalf, and we decline to do so." *In re A.H.*, No. 20-1660, 2021 WL 1399743, at *4 (Iowa Ct. App. Apr. 14, 2021); *accord Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974). So we find her request for an extension waived.

In any event, all we have to look at is the mother's past performance. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). The mother has repeatedly stated that she is ready to make the changes necessary to have the child returned to her custody, but she has never followed through. In other words, while the mother can talk the talk, she has never walked the walk. Given the mother's "past performance we are not convinced additional time or services will change" her. *Id.* So we conclude additional time is not warranted.

## III. Conclusion

We affirm the termination of the mother's parental rights.

**AFFIRMED.**