**IN THE COURT OF APPEALS OF IOWA**

No. 25-1323
Filed October 29, 2025

**IN THE INTEREST OF C.K.,**
**Minor Child,**

**A.K., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Michelle M. Jay of Bray & Klockau, P.L.C., Des Moines, Attorney and Guardian ad Litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her child under Iowa Code section 232.116(1)(h) (2025).[1]  She challenges each of the three steps in our termination analysis and asks for more time to work towards reunification. Following our de novo review of the record, we affirm the juvenile court's ruling. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

I.      **Background Facts and Proceedings**

"She's sunshine."  That's how the mother described her three-year-old daughter at the hearing to terminate her parental rights.  The child was born prematurely in January 2022 due to a condition called cytomegalovirus.  She was later diagnosed with other medical conditions, including cerebral palsy, microcephaly, diffuse cerebral and cerebellar atrophy, and periventricular leukomalacia.  Because the child's umbilical cord tested positive for marijuana at birth, the Iowa Department of Human Services[2] provided voluntary services to the family for about six months.

The department became involved again in June 2024 on a report that the mother was allowing a registered sex offender to care for the child and that there was domestic violence in the home.  The State petitioned to have the child adjudicated in need of the court's assistance.  The mother stipulated to the adjudication in August, and the child was allowed to remain in her custody under

---

[1] The father consented to the termination of his parental rights and has not appealed.

[2] In 2022, the Iowa Department of Human Services merged with the Iowa Department of Public Health to create the Iowa Department of Health and Human Services.

the department's supervision. But in October, the department's social worker noticed that the mother was acting erratically during a family-focused meeting. The social worker asked the mother to participate in a drug test, which was positive for methamphetamine, amphetamine, and marijuana. The child's hair test was also positive for the ingestion of methamphetamine and marijuana. The child was removed from the mother's custody at the end of October and placed with a foster family, where she has since remained.

In the months between the child's removal and the permanency hearing in April 2025, the mother made minimal progress towards reunification. While the mother's supervised visits with the child were positive, her attendance at those visits was inconsistent. She also failed to take advantage of the foster family's open invitation to their home for visits with the child. The mother attended only two of the child's sixty physical, occupational, and speech therapy sessions, and none of the twenty-five medical appointments for the child. She waited until January 2025 to complete a mental-health evaluation and did not complete a substance-use evaluation until April—just before the permanency hearing. Out of the thirty-four drug tests requested by the department, the mother only participated in four—all of which were positive for illegal substances.[3]

The mother entered inpatient substance-use treatment in mid-May, close to one month after the State petitioned to terminate her parental rights. She admitted that she used methamphetamine the day before she went into treatment. But by the termination hearing in July, she was forty-five days sober. She was also

---

[3] All four tests were positive for methamphetamine and amphetamine; three were also positive for marijuana.

participating in mental-health services. Despite these positive steps, the mother agreed the child could not be safely returned to her custody. She testified that she still needed to work on staying sober, obtaining a stable residence, and finding employment. But she "begg[ed] for more time to be able to prove" that she could safely care for her daughter.

The juvenile court denied the mother's request and terminated her parental rights under Iowa Code section 232.116(1)(h). The court found that while the mother wanted to parent her daughter,

> by her own admission, she is not in a position to be a full-time parent at the present time. [The mother] believes she can be ready to parent [the child] in "a couple of months." The Court is not convinced. [The mother] was very slow to engage in services. She has only been in treatment for a little over a month and her last use of methamphetamine was the day before she entered treatment. [The mother] is unemployed and does not have a home for [the child] to return to.

The mother appeals.

## II. Analysis

In reviewing the juvenile court's ruling, we use a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) termination is in the best interests of the child, and (3) any of the permissive exceptions to termination should be applied. *L.B.*, 970 N.W.3d at 313; *see also* Iowa Code § 232.116(1)–(3). If all three steps support termination, we then consider any other issues the parent raises, such as whether more time should have been granted. *See* Iowa Code §§ 232.104(2)(b), 232.117(5). Although the mother has combined some of these steps in her petition on appeal, we understand from her arguments

that she is challenging each of them and asking for an extension of time. On our de novo review of the record, we conclude that her claims should be denied.

On the first step, the mother only challenges the final element of section 232.116(1)(h)—that the child could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The mother argues that if she was given more time to complete treatment and "establish housing in a safe environment," the child could be safely returned to her custody. This argument echoes the mother's concession at the termination hearing that she was not ready for the child to be placed in her custody. That concession is clear and convincing evidence supporting termination under section 232.116(1)(h). *See In re M.S.*, 2025 WL 548519, at *1 (Iowa Ct. App. Feb. 19, 2025) (collecting cases). It's also supported by the record.

After more than a decade of illegal substance use, the mother had been sober for just forty-five days at the time of the termination hearing. And that sobriety only occurred in a supervised setting. *See In re P.F.*, No. 15-1103, 2015 WL 5970017, at *3 (Iowa Ct. App. Oct. 14, 2015) (recognizing that sobriety in a structured, custodial setting does not demonstrate an ability to maintain sobriety in the community). While the mother has done well in treatment, she has a long road ahead of her, which includes finding a home and a job. These struggles would be difficult for any parent to overcome. They are even harder for the parent of a

medically fragile child. *See In re J.E.*, 723 N.W.2d 793, 799 (Iowa 2006) (explaining a child's special needs must be evaluated in determining whether the child can be safely returned to parental custody). As the juvenile court found, attending to the child's constellation of health conditions requires "a sober, organized and attentive" parent. With the mother's sobriety still in its early stages, we agree with the court that the child could not be safely returned to her custody at the termination hearing.

The mother combines the next two steps into one issue heading, which asserts the juvenile court "erred when it determined that termination would be in the child[]'s best interests pursuant to Iowa Code [s]ection 232.116(2)–(3)." She focuses on her bond with the child, which is a relevant consideration in both steps. *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) ("A child's mental and emotional condition and needs is inherently impacted by the child's bond with a parent, so the parent-child bond is a relevant consideration in the best-interests analysis."); *see also* Iowa Code § 232.116(3)(c) (allowing the court to avoid termination if there is "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). Although blending these steps on appeal carries the risk of waiver, we will consider both arguments here. *See L.A.*, 20 N.W.3d at 534 n.2 (noting the general rule that a party raising "both a best-interests and permissive-exception argument . . . needs a separate issue heading and argument for each").

The social worker, guardian ad litem, and foster mother all agreed that the mother shared a close bond with the child. They each described how the child and mother would "light up when they see each other." But the defining elements of a

child's best interests are the child's safety and need for a permanent home. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011); *see also* Iowa Code § 232.116(2) (requiring the court to give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). Unfortunately, the mother could not provide those basic needs for the child, who was flourishing in her foster home. The social worker testified at the termination hearing that in the foster parents' care, the child "went from surviving to thriving." She had gained weight, increased her mobility, and made progress in her communication skills. The foster parents were dedicated to caring for the child long-term, and they planned to maintain a relationship with the mother, who described them as "amazing." *See* Iowa Code § 232.116(2)(b) (considering the foster family's willingness "to permanently integrate the child"). Under this record, we conclude that terminating the mother's parental rights was in the child's best interests.

We also find the mother failed to prove by clear and convincing evidence that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c); *see In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (placing the burden to prove a permissive exception to termination on the parent resisting termination). The mother argues the "record is replete with testimony supporting the closeness of [her] relationship" with the child. That's true, as discussed above. "Yet the existence of a bond is not enough." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The child, who was only three years old at the termination hearing, had been removed from her mother's custody for eight months. The mother had limited involvement with her during that

period. Meanwhile, the child achieved stability in the foster home, where she was doing well. Under these circumstances, we conclude the mother did not meet her burden to prove the exception should be applied. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (finding the section 232.116(3)(c) exception did not apply despite the existence of a bond where the children were young, had been out of the mother's custody for almost two years, and had achieved stability out of the mother's home).

Lastly, the mother claims that she should "be given a few more months, under court supervision, to prove that she can care for the child and keep her safe." She does not, however, provide us with any "specific factors, conditions, or expected behavioral changes which [would] comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" the requested extension. Iowa Code § 232.104(2)(b). In any event, while we believe the mother has the capacity to achieve sobriety and rebuild her life, it is not in the child's best interests to delay permanency in the hope she may eventually do so. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable.").

**AFFIRMED.**